We are ready to hear our first case on our docket. We have five cases, only four for argument this morning, and we're ready to hear arguments from the appellant in United States v. Yarclay. May it please the court, Mr. Yarclay's 72-month sentence for a single count of bank fraud to which he pleaded guilty, which exceeds by 31 months the low end of the guideline range found to apply, and by 21 months, the high end of the guideline range was substantively unreasonable. And one of the reasons it was substantively unreasonable is that the district court erroneously found two sentencing enhancements. One, going to whether there was 10 or more victims of the events. Two, whether one means of identification was used to produce another means of identification. Counsel, have you waived the procedural unreasonableness claim? No, Your Honor, because in order to determine whether or not the sentence was substantively unreasonable, there's a lot of interplay between that and whether the sentence was procedurally unreasonable. I don't think the two can be divorced. We would cite United States v. Barnes, a 2018 case from this court, as support for that argument, where they say the line is blurred or this court said the line is blurred between procedural unreasonableness, substantive unreasonableness, or reasonableness. Counsel, apart from that, the blurred language, has this court ever recognized that miscalculation of a guidelines range could be a basis for a reasonableness challenge? Your Honor, I'm not sure whether this court has explicitly held that or not, but I think the Barnes case allows us to argue that. And our point is simply this, that by finding two sentence enhancements which did not apply, that sets a false floor for the ultimate sentence. So I don't think that there's any way you can divorce a discussion of substantive unreasonableness from procedural unreasonableness, where one drives the other. So even though the language of your waiver in your plea agreement specifically says you're waiving any challenge to the calculation of the sentence? That's correct, Your Honor, because we are allowed to appeal the substantive unreasonableness based on the plea agreement. And regardless of that language, in order to look at whether it's substantively unreasonable or not, you've got to look at the whole picture. And if a sentence is procedurally unreasonable, it follows logically, to me anyway, that it's going to be substantively unreasonable. So we don't believe there's any waiver, nor do we believe, as the government argues, that there is any harmless error here. The trial court or the district court, as the government argued, said that it would have imposed the same 72-month sentence on Mr. Yarclay regardless of whether or not it had found these two sentencing enhancements. And the court has allowed something like that to go on, but we would submit that under the Porter case and the Geiswein case, the fact that a district court says that an error is harmless does not foreclose the ability of this court to determine whether it's harmless or not, because after all, harmless error is not a test that is applied by a district court. It's an appellate test. It's a test for this court to determine whether or not, number one, there's error, number two, whether it's harmful or harmless. Well, can't we take the district court at its word when it says, regardless, I would sentence you to this length of time? Does that mean anything? Well, I certainly think that that can be taken into account, but it's more than passing strange to me that a court can say, I would have done the same thing regardless if it had, in fact, found that the sentencing guideline range was significantly lower than it was actually found to be, and to whether they can say with assurance that even in that situation, the sentence would have been the same. I've had this happen in state court too, where a state trial judge says, well, if it's error, it's harmless. That's an appellate test for this court to apply, so I don't think there's any waiver or any harmless error. This is distinct from a harmless error analysis, at least as far as the district court's concerned, because there's a guidelines calculation, and then there's the ability that can presumably get you to a certain sentence, and then there's the ability of a district court judge to look at the 3553A factors and exercise their discretion and go very up above what the guidelines would have allowed. So, it's not necessarily that it's harmless. He says, look, I've calculated the guidelines. This is what it is, and even if the guidelines didn't say this, I would exercise my discretion under 3553A and reach the same result. I mean, that is permissible, and that's been upheld in cases in this circuit. Yeah, I understand that, Your Honor, but I think when you have some kind of dramatic errors such as you had here, it's a little difficult for a district judge to project into the future or into the past what they might have done otherwise. So, we don't... I mean, does this all get sort of circular, though, because you reserve the right to raise... We never even get to this if the plea waiver works or is effective, and under your logic, there could always be a procedural problem with the guideline calculation. So, every time you reserve the right to challenge substantive reasonableness, you would also be reserving the right to challenge procedural reasonableness. By implication, if they work together as they do, we submit in this case, and with respect to the 10 or more victims enhancement, Your Honor, the government replied to it on the merits in addition to its other procedural arguments, and it's clear in this case that the only true victims were the five banks who were out money. None of the payors suffered any monetary loss. None of the payees suffered any monetary loss. The harms to those... Do we only, counsel, look at monetary loss, or do we look at inconvenience and total chaos of when somebody takes your driver's license number and also uses your name to cash counterfeit checks? Is that a loss, a damage to a victim? It's an intangible loss, and the government certainly pointed out that in 2009, this particular provision of the guidelines that we're discussing was amended to expand the category of victims in a fraud case to those who suffer intangible losses. Formerly, it was just monetary losses, but we would submit that that 2009 amendment is unconstitutional in light of the trio of cases from the U.S. Supreme Court, starting with Skilling v. U.S. Have you argued this in your brief, the unconstitutionality? We have argued that it is improper under Skilling, under McDonnell, and under Kelly for intangible harm that is non-monetary in nature to be used to increase the sentence, because the defendants in those cases were allowed to escape, at least in part, criminal liability altogether for fraud cases in which there was just an intangible harm. When you're talking about honest services fraud in the Skilling case, a bribery, an alleged bribery where there's no quid pro quo or hard cash exchange, as in McDonnell, or the lackeys of Governor Christie shutting down the bridge in Kelly, there was Supreme Court decisions in all of those saying intangible harm ain't gonna get it, and if intangible harm's not gonna get it done with respect to actual criminal liability, it certainly shouldn't be able to get it done with respect to a sentencing enhancement. Aren't you mixing apples with oranges? That is, the charges in those cases very much are different from the charges we have here, and you're talking about burdens of proof that would be required to prove up these charges versus sentencing. Apples and oranges. What is required to sentence? I don't think it's apples and oranges, because I think if certainly somebody can escape criminal liability altogether as these well-heeled defendants did in those three cases, certainly by the logic used by the Supreme Court in those cases, you can't enhance somebody's punishment for intangible harm. So that's our argument, Your Honor. I'm just looking. Did you actually cite to those cases in your opening brief? Well, Your Honor, let me look, because I'm not seeing Skilling, and I can't remember the other ones you were talking about. Those were in our reply brief, Your Honor, but we made the argument in our opening brief that the court erred in applying that particular enhancement because only intangible harm was involved. So yes, that's correct, Your Honor. And with respect to the one means of identification to produce another means of identification, just very briefly on that, there is no way that a charge itself can serve as a means of identification. Something more is required. Another form of identification is required, and we think the Tatum case is in line with that, where this court said that a forged or counterfeit paper check did not constitute an access device, because there was another step required in the chain to complete the transaction. It couldn't just be completed based on a paper check. And the same is true here. If I go to a bank and present a counterfeit check with no further form of ID, I'm not going to get the check cashed. If a policeman stops me for speeding and I say, well, I don't have a driver's license, I don't have a state ID card, I don't have anything else, but here, I've got this check with my name on it. That does not serve as a means of identification. The government says that this means of identification language is a term of art, a term of art. Well, if it's a term of art, it wrenches ordinary language beyond all reasonable meaning, because a bogus check, a forged check, a counterfeit check in and of itself is not, is not a means of identification. It's not a means of identification that produces another means of identification. But the bottom line here, just in the next 30 seconds or so, we sincerely believe that Mr. Yarkley's sentence was substantively unreasonable because everything the district court said in support of its increasing the sentence above and beyond the guideline range was already taken into account fully in the guidelines. The court said that it increased the sentence above the range primarily to incapacitate Mr. Yarkley because he was unstable. Well, a lot of that's due to his mental problems, and his criminal history category was a five. So that fully took into account his criminal history with respect to this old Tarrant County charge where nobody was actually hurt or any of these other charges. So Mr. Yarkley's, Mr. Yarkley's criminal history is not was this alleged threat to the bank manager and Lawton. The testimony was ultimately ambiguous on that. Only words were exchanged. But there was a threat. There was a threat. The ambiguity arose only of whether or not there was a weapon referenced. Yes, that's correct, Your Honor. Uh, so, Your Honors, uh, we would ask that the court vacate Mr. Yarkley's sentence and remand it for re-sentencing based on the arguments that we've made here today in our opening brief and in our reply brief. And unless there are other questions at this time, I would like to reserve the remainder of my time. I just have one more. Yes, Your Honor. If you're, if you're challenging the validity of the plea agreement, that is that you did not waive procedural substantiveness, have you sought to withdraw the plea? No, ma'am. Thank you. Thank you. We're ready to hear from the government. May it please the court. My name is Will Ferrier, appearing for the United States. The district court sentenced Mr. Yarkley to 72 months in prison for committing the offense of bank fraud. This court should affirm that sentence. Mr. Yarkley waived his right to raise procedural issues on appeal when he entered into a plea agreement, and any error in calculating the guidelines was harmless in this case. Even if Mr. Yarkley did preserve his challenges to the guideline calculation, those calculations were correctly made by the district court. And finally, the sentence that the district court entered was substantively reasonable. Mr. Yarkley argues here that the court can entertain his procedural arguments as part of the substantive reasonableness decision. First of all, we disagree. Mr. Yarkley waived his right to raise procedural challenges and to challenge the manner in which the guidelines were calculated. That was a clear and voluntarily waiver set forth in the plea agreement and has been routinely held up, that language has been returned for waiving those rights. He received the United States Agreement to Dismiss Account of Aggravated Identity Theft in Violation of Title 18 of the United States Code Section 1028A, which would have been a mandatory two-year addition to his term of imprisonment on top of the term of imprisonment for his underlying bank fraud or a conviction of any of the number of counts that the United States was raising in the superseding indictment. Counsel, why wouldn't an error in imposing sentencing enhancements at least be a relevant consideration in the substantive reasonableness analysis? In other words, maybe he waived a direct on procedural challenge, but as Mr. Autry points out, these things are not sharply distinguishable. If there's some relevance to substantive reasonableness, why should this court be prevented from taking that into account? Well, so here, first of all, this court should be prevented from taking it into account because the defendant waived the right to make those challenges to how the court calculated the guidelines and received something in response to that. Second of all, so Mr. Yarkley is correct that Barnes has this language about blurring the lines between procedural and substantive reasonableness. The Barnes case was dealing specifically with whether the district court addressed the 3553 factors and then the substance of how the district court addressed the 3553 factors. Barnes says nothing about allowing a defendant or an appellant to challenge guidelines calculation on appeal. In fact, the guidelines calculation is the first example of a procedural error in Gaul, the Supreme Court case, which lists, which addresses substantive reasonableness and procedural reasonableness. The calculations of the guidelines is a procedural matter and Mr. Yarkley has the right to challenge that. Furthermore, here in this case, which I think makes this case not a good case to address your honor's question, is that the district court made clear that the particular application of these guidelines to these particular facts did not have a bearing on the ultimate sentence that the court page 149 and 150 of the record. The intricacies of how these guidelines apply to these particular facts would not affect the ultimate sentence and the district court did not just simply say, even if I decided the other way, I give the same sentence, the district court went at length and addressed the specific objections that he found would not affect the sentence that he ultimately gave. So there may be a case where a court bases its decision on some guideline determination in which it might be a good vehicle for determining whether there's some procedural error that affected the substantive reasonableness of it, but this is not that case. Mr. Yarkley, in addressing his objection to the multiple victims guideline enhancement, raises a constitutional vagueness challenge. This was not raised at the district court, though I agree it was raised in the opening brief with the citation to Kelly, and so this was not raised and was not really clarified until the reply brief. A vagueness challenge to the guidelines, a constitutional vagueness challenge to the guidelines is not permissible. In Beckles v. United States, the Supreme Court held that vagueness challenges are permissible primarily because they merely guide the district court's discretion, and that site is available at 137-SCT-894. If you want to give us a real 28J letter, I'm sure we're all aware of the Beckles site, but you need to do that to clean up the site. I'll do that, Your Honor, and the other case that I would mention, so it appears the district courts have recognized that vagueness challenges are not amenable, that guidelines are not amenable to vagueness challenges, and then this court addressed that matter in United States v. Pullen, P-U-L-L-E-N, and I can include that site in a 28J letter as well, although Pullen appears to have dealt with a mandatory guideline and then mentions the application of a vagueness challenge to a discretionary guideline. Regarding Mr. Yarkley's arguments about the means of identification enhancement, Mr. Yarkley relies on comparing this to the access device statute, which is distinct from the definition of means of identification in Title 18 United States Code Section 1028-D-7, and then the first quarter case that we cite in our brief provides a helpful discussion from the Tenth Circuit regarding what is and is not a means of identification. There's an extensive discussion about a forged signature on a check being a means of identification in that case, so a check is a means of identification, and because it has a bank account number, a routing number, names on it, and signatures on it, so there should be no question that a check is a means of identification. Well, is more required? I was thinking here that this theory would be supported because you have two things. You have the driver's license and a check with that same name on it, so together I was thinking that's a means of identification. Am I wrong on that? More is not required. They are both means of identification, certainly. The statute states that a means of identification is actually the name and it's actually the numbers, and so you see courts talking about a check being a means of identification, but that's because it has names and numbers on it. The only thing that's more that is required in the definition in the guidelines is that the name or number belong to a real, not fictitious person. Right, and that's where the driver's license came in, I thought. Well, that's correct, but additionally, so the guidelines is applying, so there's no question that these are means of identification. It's a more interesting question whether Mr. Yarkley was using a means of identification to produce another means of identification, and so when he took a stolen mail, a stolen driver's license, and took the numbers and put them on a check and forged a signature on that check and basically produced an entire new check, that was the production of an additional means of identification, and so we rely on the Scott case out of the Eighth Circuit, which we cited in our brief, which addresses the application of that particular guideline, but as I said before, let me ask you a question. I mean, even if he just used a check, he still used a means of identification, didn't he, because he took a check and took the information off of it, which seems to be specifically outlined in the took that, put it on a new check that he made, and he doesn't have to just, I mean, sort of digging into what Judge Briscoe was asking you, I mean, did he have to have a driver's license too, or is the check by itself enough? The check by itself is enough. That's our position, yes, and it gets more interesting because the guidelines have an example where simply forging a signature on a stolen check is not the production of an additional means of identification according to the examples in the guidelines, but when we've had other circuits address the fact pattern when a defendant actually produces a whole new check and moves the identifiers over to a new check, then it becomes the production of an additional means of identification. Well, how were the driver's licenses used here, just to get a name that they could use? Yes, to put the payee on the check, and then the driver's license were certainly presented when Mr. Yarkley went to the banks. So, I was looking at the driver's license at the wrong end of the transaction. You already had the counterfeit check, and then you have it prepared to say whatever you want it to say, and then you go to cash it and use the driver's license at that point. Is that what happened here? That's correct. Okay. Finally, just briefly, Your Honors, this was a substantively reasonable sentence. The district court was permitted to sentence Mr. Yarkley to any rationally available choice. Here, it's clear the district court took particular care with sentencing Mr. Yarkley. He notified Mr. Yarkley prior to the sentencing that he was considering burying upward. Judge Friant's words explaining his decision are more eloquent than anything I could say about them here today, but he found that 72 months was the bare minimum needed to reflect the seriousness of Mr. Yarkley's offense, primarily because of the need to reflect the seriousness of the crime and the need to incapacitate Mr. Yarkley. The district court heard evidence for a better part of a day from a jailer who had interacted with Mr. Yarkley and commented on his behavior, from the president of Liberty National Bank who testified about the threat that Mr. Yarkley made, and from Special Agent Josh Hanink who summarized the investigation. So, the district court was in a prime position to judge the need for this sentence and provided more than adequate support explaining his decision. Counsel, could I just ask you to address the appellant's argument that the Senate runs afoul of our decision in the United States versus Pinson? Certainly, Your Honor. So, in Pinson, Judge McConnell cautioned district courts against punishing people for diagnosed mental illnesses. The variance in Pinson was well above the variance that we have in this case, and the defendant in Pinson had pointed to some diagnosed mental illness. Here, Mr. Yarkley simply offers a circular argument or a tautology and says he had a lot of antisocial behavior, and because he shouldn't be held responsible for it, he must have some mental illness. Therefore, the court is not allowed to hold him responsible for his antisocial behavior. He did not raise this specific objection, this accusation that the at the district level, and this sentence is certainly more reasonable than the one upheld in Pinson. Well, as I recall, Pinson wasn't the problem there. The district court specifically pegged the length of the sentence based on the need for mental treatment and said something about, you know, if you have a short sentence, you'll never have any ability or opportunity for any kind of treatment while incarcerated. So, my point is that mental illness played a big role in the length of the sentence imposed. Absolutely, and that is a distinction from this case, Your Honor. Thank you. Thank you. Mr. Autry? Thank you, Your Honor. Just briefly, with respect to whether we raise the mental illness aspect in the district court, we certainly argue that much of Mr. Yarkley's antisocial behavior was traceable to emotional and mental problems that he had. I would note further with respect to our means of counterfeit check. So, this is an issue of first impression, I suppose, in this court. The government relies on cases from outside the 10th Circuit. And finally, with respect to our argument on the 10 or more victims and intangible harm, I understand that the government's going to cite Beckles and Pullen in a 28J letter, but I would point out, and I thank Mr. Farrier for this, I misspoke earlier when I said I don't believe we cited any of these cases in our opening brief. We did, as Mr. Farrier said, cite Kelly v. United States at page 23. We also cited McDonnell v. United States at page 23. The only case among those three that we mentioned in argument that wasn't cited in the opening brief was Skilling, and it simply gives a similar result as the other cases. So, we would ask the court to vacate this sentence and remand it for resentencing. Thank you. Thank you both for your arguments this morning. The case is submitted.